IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | |
| 17853 North Mount Olive Rd., | Case No. _____ |
| Gravette, AR 72736 | |
| UNDER RULE 41 | |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, George Handey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this Affidavit in support of an Application under Rule 41 of the Federal
Rules of Criminal Procedure for a warrant to search the following:

2.      The premises to be searched is a residence located at 17853 North Mount Olive
Rd., Gravette, AR 72736, any vehicles on the premises including any locked or closed
compartments and movable containers therein, and any mobile electronic devices found on the
premises.  The premises to be searched is further described as a residence located in a wooded
area. Physical surveillance of the property could not be conducted because the residence is located
in the wooded area. An open source search of the residence disclosed that the residence appears to
have a pool, vehicles, and several outer buildings. State of Arkansas Driver License records
disclosed that Richard Barnett had a listed address of 17853 N Mount Olive Rd., Gravette, AR
72736. A search of records maintained by the United States Small Business Administration
disclosed Richard Barnett applied for a Paycheck Protection Program loan and a residence was

disclosed as 17853 Mount Olive Rd., Gravette, AR 72736. The premises to be searched is further described in Attachment A and will be searched for the items described in Attachment B.

3.      I am a Special Agent with the Federal Bureau of Investigation and have been since July 2018.  I am currently assigned to the Fayetteville Resident Agency. As part of my duties as an FBI agent, I investigate national security matters related to domestic and international terrorism. I have received basic training at the FBI Academy in Quantico, Virginia regarding venues, internet platforms, and social media that individuals utilize to engage in domestic and international terrorism activity.

4.       This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1752(a)- Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority; 40 U.S.C. §5104(e)(2)- Violent Entry and Disorderly Conduct on Capitol Grounds 18 U.S.C. § 641 – Theft of Public Money, Property, or Records have been committed by Richard Barnett. As explained below, there is also probable cause to search the premises described in Attachment A for evidence of these crimes, and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

6.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. Specifically,

elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Vice President Mike Pence was present and presiding in the Senate chamber.

7.       With the joint session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades surround the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. At such time, the joint session was still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, at approximately 2:15 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until approximately 8:00 p.m.

8.      During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

9.      United States Capitol Police ("Capitol Police") learned that an individual entered the restricted office area of the Speaker of the House of Representatives Nancy Pelosi and took photographs with his feet propped up on furniture. Those photos were circulated on numerous news media platforms which identified the individual as RICHARD BARNETT of Gravette, Arkansas. Capitol Police searched law enforcement databases including Department of Motor Vehicle records and obtained a photograph and biographical information for BARNETT. These records confirmed that the individual in the news photographs did in fact appear to be RICHARD BARNETT of Gravette, Arkansas DOB               .

10.     The photos circulated by news media depict BARNETT in and around U.S. Capitol property. One photo shows BARNETT seated inside of Nancy Pelosi's office with his feet propped on a desk with an America flag lying on an adjacent credenza. BARNETT is wearing a hat, plaid jacket, blue jeans, and brown boots in the photo. Another photo depicts BARNETT seated holding an envelope in his left hand addressed to The Honorable Billy Long 2453 Rayburn House Office Building Washington, D.C. 20515 and a digital signature of Nancy Pelosi. In another photo, an individual whose face is blocked by a flag but appears to be BARNETT based on his clothing is

4

seated at a different desk with his feet propped holding an American flag and a cell phone. Another unidentified individual in a brown jacket is sitting next to him on a couch.

11.    Video surveillance from a camera positioned outside of the Speaker's main office door captures individuals entering and exiting the office. At approximately 2:30 p.m., several unidentified individuals appear to try the door to the office however the door is locked. At approximately 2:33 p.m. an unidentified individual pushes in the door to the office. At 2:50 p.m. BARNETT is captured on surveillance video carrying an American flag and a cellular phone while entering the doors which lead to the Speaker's conference room adjoining the main office space. BARNETT appears to be recording video or taking photographs as he enters the room. Additionally, as he is entering, he is following behind the unidentified individual in the brown jacket. At 2:56 p.m. BARNETT is captured leaving the main office doors of the Speaker's office space with only a phone in his hand.

12.    On the same date, BARNETT spoke to media outlets in a video recording. In the recording, BARNETT is wearing the same hat and plaid jacket as worn inside of the Speaker's office except that BARNETT appears to have removed his shirt. BARNETT is asked by a person off camera  how BARNETT obtained an envelope he is holding, which was addressed to The Honorable Billy Long 2453 Rayburn House Office Building Washington, D.C. 20515 with a return address of Office of the Speaker U.S. House of Representatives Washington, D.C. 20515 and a digital signature of Nancy Pelosi. BARNETT states "I did not steal it. I bled on it because they were macing me and I couldn't fucking see so I figured I am in her office. I got blood on her office.

5

I put a quarter on her desk even though she ain't fucking worth it. And I left her a note on her desk that says "Nancy, Bigo was here, you Bitch."

13.     In another photograph which appears to be taken outside on Capitol grounds, BARNETT is depicted holding the envelope he purported to have taken from Speaker Pelosi's office. Based on the writing on the envelope, the envelope appears to be the same envelope BARNETT was photographed holding inside of the office building.

14.     Furthermore, I have reviewed numerous open-source news articles that show Barnett in the Speaker's office and holding a cell phone in his hand.

15.     Between January 6 and January 7, 2021, Barnett contacted law enforcement in Arkansas and indicated that he would travel back to Arkansas from Washington, D.C. and that he would meet with law enforcement regarding its investigation into the above-referenced offenses on the morning of January 8, 2021.

16.     On January 7, 2021, an arrest warrant and complaint were signed by U.S. Magistrate Judge charging Barnett with violations of 18 U.S.C. § 1752(a)- Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority; 40 U.S.C. §5104(e)(2)- Violent Entry and Disorderly Conduct on Capitol Grounds 18 U.S.C. § 641 – Theft of Public Money, Property, or Records.

17.     On January 8, 2021, Barnett surrendered himself to law enforcement custody in Benton County Sheriff's Office in Bentonville, Arkansas. At the time of his surrender, Barnett

turned over to law enforcement the envelope which was taken from Speaker Pelosi's office. Law

Enforcement inquired of Barnett about his cellular device and Barnett indicated it was not on his

person. He also commented that the agents may not find much at his house because he had people

packing it up the night before. Barnett did indicate he spent the night of January 7, 2021 at his

home at 17853 Mount Olive Rd. Barnett indicated that he recorded events at the Capitol but was

not specific as to how he recorded it.

18.     Due to Barnett's above-referenced statements regarding his phone and travel back

to Arkansas, I believe that Barnett's cellular phone and the clothing worn by Barnett during the

commission of these offenses are located in his property or vehicles located at 17853 N Mount

Olive Rd., Gravette, AR 72736.

## TECHNICAL TERMS

19.     Based on my training and experience, I use the following technical terms to

convey the following meanings:

> a.  IP Address: The Internet Protocol address (or simply "IP address") is a unique
>
> numeric address used by computers on the Internet.  An IP address looks like a
>
> series of four numbers, each in the range 0-255, separated by periods (e.g.,
>
> 121.56.97.178).  Every computer attached to the Internet must be assigned an IP
>
> address so that Internet traffic sent from and directed to that computer may be
>
> directed properly from its source to its destination.  Most Internet service providers
>
> control a range of IP addresses.  Some computers have static—that is, long-term—

IP addresses, while other computers have dynamic—that is, frequently changed—
IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices
that communicate with each other.  Due to the structure of the Internet, connections
between devices on the Internet often cross state and international borders, even
when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer
data can be recorded.  Examples include hard disks, RAM, floppy disks, flash
memory, CD-ROMs, and other magnetic or optical media.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

20.     As described above and in Attachment B, this application seeks permission to
search for records that might be found on the premises in mobile cellular devices.  One form in
which the records might be found is data stored on one or more digital devices.  Thus, the warrant
applied for would authorize the seizure of electronic storage media or, potentially, the copying of
electronically stored information, all under Rule 41(e)(2)(B).

21.     Probable cause.    I submit that if a mobile cellular device is found on or in the
premises, there is probable cause to believe that records relating to Barnett's commission of the
offenses, and thus records that are evidence of these crimes, described in this Affidavit will be
stored on that cellular phone, for at least the following reasons:

a. Individuals who engage in criminal activity, including violations of 18 U.S.C. § 1752(a)- Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority; 40 U.S.C. §5104(e)(2)- Violent Entry and Disorderly Conduct on Capitol Grounds 18 U.S.C. § 641 – Theft of Public Money, Property, or Records, use digital devices, like the Device(s), to access websites to facilitate illegal activity and to communicate with co-conspirators online; to store on digital devices, like the Device(s), documents and records relating to their illegal activity, which can include logs of online chats with co-conspirators; email correspondence; text or other "Short Message Service" ("SMS") messages; contact information of co-conspirators, including telephone numbers, email addresses, identifiers for instant messaging and social medial accounts; stolen financial and personal identification data, including bank account numbers, credit card numbers, and names, addresses, telephone numbers, and social security numbers of other individuals; and records of illegal transactions using stolen financial and personal identification data, to, among other things, (1) keep track of co-conspirator's contact information; (2) keep a record of illegal transactions for future reference; (3) keep an accounting of illegal proceeds for purposes of, among other things, splitting those proceeds with co-conspirators; and (4) store stolen data for future exploitation.

b.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files, or data stored on mobile cellular devices, can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer or mobile cellular device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

d.  Wholly apart from user-generated files, digital device storage media—in particular, digital devices internal hard drives—contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Digital device users

10

typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

e. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only mobile cellular data that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how cellular phones were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on storage medium in the premises because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Mobile cellular devices can record

11

information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within digital devices (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, the digital device can indicate how and when the digital device was accessed or used. For example, as described herein, digital devices typically contain information that log: digital device user account session times and durations, digital device activity associated with user accounts, electronic storage media that connected with the digital device, and the IP addresses through which the digital device accessed networks and the internet. Such information allows

investigators to understand the chronological context of the digital device or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a digital device or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a digital device may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the digital device user. Last, information stored within a digital device may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within the digital device may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a digital device works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital device evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data on a digital device is evidence may depend on other information stored on the digital device and the application of knowledge about how a digital device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a digital device to send or post messages over the internet, the individual's device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for

14

evidence of the crime. This would also be true for instances when Barnett uses a device to commit or promote unlawful entry of restricted areas or theft of public money, property, or record activities. The device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a digital device used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

23. <u>Necessity of seizing or copying entire digital device or storage media.</u> In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the digital device's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Digital devices can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

     c.   Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

24.   <u>Nature of examination.</u>   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying digital devices and storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

25.   Because several people share the premises as a residence, it is possible that the premises will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

<b><u>CONCLUSION</u></b>

26.   I submit that this Affidavit supports probable cause for a warrant to search the premises as described in Attachment A and seize the items described in Attachment B.

## REQUEST FOR SEALING

27.    It is respectfully requested that this Court issue an order sealing, until further order

of the Court, all papers submitted in support of this Application, including the Application and

Search Warrant.  I believe that sealing this document is necessary because the items and

information to be seized are relevant to an ongoing criminal investigation into the violations of

federal law by Richard Barnett.  Based upon my training and experience, I have learned that

criminals actively search for criminal Affidavits and Search Warrants via the Internet, and

disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online

through the carding forums.  Premature disclosure of the contents of this Affidavit and related

documents may have a significant and negative impact on the continuing investigation and may

severely jeopardize its effectiveness.

Respectfully submitted,

George Handey
Special Agent
FBI

Subscribed and sworn to before me on this __8th____ day of January 8, 2021:

THE HONORBALE ERIN L. WIEDEMANN
CHIEF UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**PREMISES TO BE SEARCHED**

The premises to be searched is a residence located at 17853 North Mount Olive Rd., Gravette, AR 72736, any vehicles on the premises including any locked or closed compartments and movable containers therein, and mobile electronic devices found on the premises. The premises to be searched is further described as a residence located in a wooded area. Physical surveillance of the property could not be conducted because the residence is located in the wooded area. An open source search of the residence disclosed that the residence appears to have a pool, vehicles, and several outer buildings. State of Arkansas Driver License records disclosed that Richard Barnett had a listed address of 17853 N Mount Olive Rd., Gravette, AR 72736. A search of records maintained by the United States Small Business Administration disclosed Richard Barnett applied for a Paycheck Protection Program loan and a residence was disclosed as 17853 Mount Olive Rd., Gravette, AR 72736.

**ATTACHMENT B**

**PROPERTY TO BE SEIZED**

1.      The items to be seized are fruits, evidence, or instrumentalities of and relating to

violations of 18 U.S.C. § 1752(a)- Knowingly Entering or Remaining in any Restricted Building

or Grounds Without Lawful Authority; 40 U.S.C. §5104(e)(2)- Violent Entry and Disorderly

Conduct on Capitol Grounds;18 U.S.C § 641 – Theft of Public Money, Property, or Records:

This includes but is not limited to the following:

a.  Records, information, and communications relating to the identity or location of

perpetrators, aiders and abettors, coconspirators, and accessories after the fact;

b.  Indicia of occupancy, residency, and/or ownership of real property;

c.  Photographs, and/or videos of Barnett in Washington D.C. on January 6, 2021, or

traveling to or from Washington, D.C. on or about that date;

d.  Records and information that constitute evidence of the state of mind of Barnett, *e.g.*,

intent, absence of mistake, or evidence indicating preparation or planning, or

knowledge and experience, related to the criminal activity under investigation;

e.  Clothing worn on or about 1/6/2021 (see attachment C);

f.  Money, property, or records from Capitol Hill in Washington, DC not owned by

Richard Barnett, public money, property, or records from the offices of Speaker of the

House of Representatives Nancy Pelosi not belonging to Richard Barnett, public

money, property, or records not addressed to Richard Barnett;

g.  Notes, ledgers, or other documents containing evidence of the above-referenced

offenses;

h.  Digital devices used in the commission of, or to facilitate, the above described offenses, including taking videos while unlawfully entering the Capitol;

i.  For any digital device which is capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities as described in the search warrant affidavit and above, hereinafter the "Device(s)":

(a)  evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

(b)  evidence of software, or the lack thereof, that would allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

(c)  evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence;

(d)  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

(e)  evidence of the times the Device(s) was used;

(f)  passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

2

(g) documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

(h) records of or information about Internet Protocol addresses used by the Device(s);

(i) records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ATTACHMENT C**







5



